The action was brought by the plaintiff to recover the possession of two seines, the one known as the 700 yard seine, and the other as the 1200 yard seine, which the plaintiff alleged had been unlawfully taken from him and the possession thereof unlawfully withheld by the defendant firm. The defendant claimed title and the right of possession to the same by virtue of a mortgage executed by plaintiff to defendant firm on the 27th of March, 1879, to secure a debt of eight hundred dollars due by plaintiff, and payable on the first of April, 1880. The plaintiff demanded of the agent of defendant firm the two seines on the 10th of November, 1879, and after issuing the summons on that day, the order of seizure was issued to the sheriff, by the authority of which he took the seines from the possession of defendant who failed to replevy them within the time prescribed by law, and delivered them to the plaintiff. *Page 259 
When the case was called for trial, the defendant's counsel submitted the following issues (to which the responses are added) which were accepted by plaintiff and approved by the court:
1. Was the plaintiff entitled to the possession of the property demanded by him, at the time of commencing this action, viz: November 10th, 1879, or any part thereof, and if any, to what part? Ans. To the 700 yard seine.
2. Is plaintiff entitled to damages by reason of defendant's taking the property, to the possession of which the plaintiff was entitled as aforesaid, and if so, how much? Ans. Five cents.
3. Did defendant sustain any damage by reason of the return of the property demanded to plaintiff under order of the court, and by the possession and use thereof by plaintiff from that time till April 10th, 1880, when it was redelivered to defendant, and if so, how much? Ans. None.
4. What was the value of the 1200 yard seine on its delivery to plaintiff in November, 1879? Ans. One thousand dollars.
5. What was its value when returned by plaintiff to defendant on the 10th of April, 1880? Ans. One thousand dollars?
The plaintiff testified in his own behalf that he was the owner of the seines in November, 1879; they were in his possession and he had brought them from Neuse river where he had fished with them during the previous spring; that he brought them in a boat to Washington, Beaufort county, and during his absence from the boat one Cohen, an agent of the defendant firm, went to the boat, seized the seines and removed and locked them up in a warehouse in Washington; that they were immediately demanded of said agent as soon as the removal of the seines was discovered, but he refused to deliver them up. The witness admitted the execution of the chattel mortgage of the 27th *Page 260 
of March, 1879, but stated that the 700 yard seine was not included in it, and that the only seine in use on Neuse river when he made the mortgage was the 1,200 yard seine; that in the character and make up of the two seines, they were entirely distinguishable; that the other property conveyed in the mortgage was destroyed by the storm of August, 1879, except the fishing sheds which were of small value; that sometime during the summer of 1879, the defendant firm wrote to witness that they were glad he was going to Washington to fish during the season of 1880, and hoped he would have better luck than he had at Newbern. He further testified that when the sheriff put him in possession of the seines, the 1,200 yard seine was heavily covered with tar and was wet and partly rotten; that he put men at once to work on it and repaired it, and that he put three coils of rope in it and returned it to Jesse G. Bryan, the defendant's agent, on the 10th of April, 1880, when the mortgage became due; that when he returned it, the seine was worth more than when the sheriff delivered it to him in November, 1879, and he had used only a small part of it for five or six weeks and the balance for eight or ten days; that he was experienced in such things and swears that 1,200 yard seine was worth more when he delivered it to defendant than when he received it; it was worth one thousand dollars when he got it, and was worth as much or more in April, 1880, when returned; that if the seines had remained in the warehouse as they were in November, 1879, wet and covered with tar, they would have been nearly destroyed; the seine was not cut or split by him; it was a sectional seine and could be divided in sections without damage, and was so made.
Defendant introduced the mortgage and admitted that the plaintiff was entitled to the 700 yard seine and to damages for taking it. Jesse G. Bryan was then introduced as a witness who testified that he was the agent of defendant *Page 261 
firm, and saw a part of the seines on a boat in Pamlico river in November, 1879, about the time they were taken into possession by said Cohen for the defendant, but did not examine them and cannot testify as to their condition at that time; when the 1,200 yard seine was delivered to him in April, 1880, about 400 yards of it looked as if it had been used as a dutch-net, and was partially rotten; but he could not say how much the seine had been damaged by its use in 1879; seines are sometimes more damaged when used as a dutch-net; he had been a fisherman for many years; the 1,200 yard seine when returned to him was worth from one hundred and fifty to two hundred dollars, but it must have cost more than two thousand dollars; that he did not see it to examine it until April, 1880, and did not know what repairs the plaintiff had put on it; the repairs might have raised the value more than the damage from its use; it was unfit for use in Pamlico river; if the seines had been wet and full of tar in 1879 and had not been attended to, they would have been ruined. He further testified that the plaintiff was a man of excellent character.
On the question of damages, the court charged the jury that the plaintiff was only entitled to nominal damages for the taking of the 700 yard seine, as he claimed no more; and as to defendant's damages, the question involved in the third issue, he told the jury they had heard the testimony of the plaintiff, Harrison, on the one side, and the witness Bryan, on the other, and after recapitulating their testimony charged the jury that they should give the defendant damages for any deterioration in value of the 1,200 yard seine from November, 1879, when taken, to April, 1880, when returned by plaintiff, and whatever the deterioration was, if any, they should so find; that this property it is admitted has been returned in specie and the question is, its depreciation, and they might add, if they saw fit, to the damage by way of interest; as to damages for detention, it *Page 262 
is admitted the defendant firm have no other right in the 1,200 seine than as mortgagee or trustee, and that although the defendant had the right to take possession of it in November, 1879, to secure it, he had no right to destroy it by use or otherwise, and that mortgage debt was not due until the first of April, 1880, and if the property when returned to defendant when this debt became due was worth as much as could be realized out of it in November, 1879, then defendant would not be entitled to damages for detention and being deprived of its use, other than for the deterioration thereof, as before stated. The jury responded to the issues as above set forth, and upon this finding the court adjudged that the plaintiff was the owner and entitled to the possession of the 700 yard seine, and that plaintiff recover five cents damages and costs of action; and it was further adjudged that defendant recover no damages for the detention of the 1,200 yard seine from November, 1879, to April 10th, 1880.
The defendant's counsel moved for a new trial on the ground that the findings of the jury were, first, contrary to the clear weight of testimony and, secondly, unsupported by any evidence; thirdly, that the findings denied the operation of a law of nature, and, fourthly, the court failed to properly instruct the jury as to the rule of damages. The motion was overruled, judgment, appeal by defendant.
We find nothing in the several grounds relied upon to sustain the motion for a new trial, which would warrant this court in reversing the judgment and granting a venire de novo.
As to the first ground: It has been so repeatedly decided that the superior court only can grant a new trial on the *Page 263 
ground that the verdict of the jury is against the weight of evidence that it is unnecessary to cite any authority.
The second ground is equally untenable, and in answer to it, it is only necessary to refer to the statement of the case and the evidence therein set forth.
As to the third ground that the jury denied the operation of the law of nature: We do not understand what is meant, unless it is that the seine was necessarily damaged by the ravages of use and time. If that is what is meant, there is nothing in the case to show that the jury did not give due consideration to the law, in connection with the proof adduced as to the condition and value of the seine, for their finding is to the effect that the operation of this law of nature was so counteracted by needful repairs of the seine, as to leave it in as good condition and as valuable when returned to defendant in April, 1880, as when received by plaintiff in November, 1879.
And lastly, as to the failure of the court to give proper instructions as to the measure of damages: His Honor at the conclusion of his charge to the jury expressly called upon counsel on both sides to say if they had any instructions to request, and they both declared that they had none. If any objection was to be taken to the charge of the court, then was the proper time to do so; and the failure to do it then, was an assent to the charge and could not be taken after judgment upon a motion for a new trial. In the case of Morgan v. Smith, 77 N.C. 37, it is held: "It was the duty of the plaintiff, if he desired fuller or more specific instructions, to have asked for them. If a contrary rule should prevail and a party could get a new trial whenever upon a critical subsequent examination of a judge's charge he could detect some point omitted or not fully treated, charges must be unnecessarily long, and even then few verdicts would stand." But even if the exception to the charge in this case had been made in proper time, we are unable *Page 264 
to discover wherein it was erroneous. The instructions given by the judge to the jury in regard to the measure of damages is substantially sustained in Sedgwick, 499.
There is no error. The judgment of the superior court must be affirmed.
No error. Affirmed.