GOODMAN DURDEN v. JOHN SIMMONS.

*Proceeding to Secure Drainage—Pleading—Jurisdiction—Commissioners.*

1. In a proceeding to secure a right of drainage over the land of defendant, the complaint alleged title in plaintiff to the land to be drained and that the water thereon flowed through a natural drain over defendant's land until the defendant closed the same: the answer alleged that the defendant knew nothing of the plaintiff's title and denied the other allegations of the complaint; *Held*, that the answer raised no issue as to the title of either plaintiff or defendant.

2. The clerk of the superior court has jurisdiction of a proceeding to obtain a right of drainage over the land of an adjoining land-owner, and to assess damages, &c.

3. In such proceeding the law requires the appointment of *seven* disinterested freeholders as commissioners.

(*Collins* v. *Haughton*, 4 Ired., 420; *Bunting* v. *Stancill*, 79 N. C., 180, cited and approved.)

PROCEEDING to assess damages alleged to have resulted from drainage, heard at Spring Term, 1880, of MARTIN Superior court, before *Graves, J.*

The plaintiff instituted this proceeding, by summons returnable before the clerk, against the defendant as owner of a tract of land adjoining his own, and of a lower level, to obtain a right of drainage by cutting a canal through it. In his complaint he alleges title in himself to the land to be drained, the superabundant waters resting on which flowed through a natural drain or ditch over the land of the de-

fendant and relieved his own until August, 1879, when the outlet was closed by the defendant, and the outflow arrested. His application is for license to construct a ditch along the former course of the water, and re-open the drain. The defendant in his answer says : (1) " That he knows nothing of the title of the plaintiff's land, as alleged," and (2) "That the allegations in articles 2 and 3 of the complaint are untrue."

In this state of the pleadings the defendant contends that the controverted allegations raise issues as to the title of each to the contiguous tracts which should have been submitted to a jury, and passed on, before an appointment of commissioners could be properly made. The clerk held the objection untenable, and proceeded to appoint three commissioners, " who, after being duly sworn, shall examine the premises or land to be drained, and the land through or on which the drain is to pass, and shall determine and report whether the lands of the petitioner can be conveniently drained except through or on the lands of the defendant," * * * and if not, to " decide and determine the route of the ditch or canal, the width thereof, and the depth thereof or height, as the case may be, and the manner in which the same shall be cut," * * * " considering all the circumstances of the case, and providing, as far as possible, for the effectual drainage of the water, from the petitioner's land, and also securing the defendant's land from inundations and every other injury to which the same may be properly subjected, by such ditch or canal ; and they shall assess for the defendant such damages as in their judgment will fully indemnify him for the use of his land, and to make report accordingly." Thus, in almost the very words following the requirements of section 2, chapter 40 of the Revised Code, prescribing the duties imposed upon the commissioners. From this judgment the defendant appealed to the superior court, and from affirmation thereof to this court.

*Mr. Jas. E. Moore*, for plaintiff.
*Messrs. Gilliam & Gatling*, for defendant.

SMITH, C. J., after stating the case. Undoubtedly a case should be constituted between proprietors of adjoining lands before the appointment of commissioners, and if the legal effect of the pleadings is to raise an issue as to the title of either party to their respective tracts, the controverted fact should be determined before any further action. If the plaintiff does not own the land to be relieved, he can proceed against no one; and if he is the owner, he cannot proceed against one who does not own the land to be rendered subservient to the proposed easement, and possesses no interest in the matter. But the plaintiff's allegations in this behalf are not legally denied or controverted, so as to raise either issue.

The first article of the answer denies the defendant's personal knowledge of the plaintiff's title, but does not that he has "information thereof sufficient to form a belief," as required by C. C. P., and is insufficient. § 100. Nor, according to a fair interpretation of its language, does the answer put in issue the defendant's title to the land alleged to be his.

The substance of the second article of the complaint denied in general terms is that the plaintiff's land can only be drained by means of a ditch to be cut through the defendant's lands, over which is the natural passway of the waters accumulating upon his own. Were an issue to be drawn up, it would be as to the situation of the contiguous tracts and the necessity of a drainage of the one by a ditch cut through and over the other; and it would not involve the title of the other. The title of each is incidentally averred in the allegation and the title of the one no more controverted than the title of the other. We give all the effect to which the answer is fairly entitled, in construing it as a

denial of the relations between the lands, and the necessity or propriety of burdening the one for the benefit of the other, and this under the statute is the appropriate function of the commissioners, as appears from the words of the act, and the construction given them before the substitution of commissioners for a jury, in *Collins* v. *Haughton*, 4 Ired., 420, wherein the court speaking through NASH, J., say: "The jury thus constituted is the special tribunal to whom by the act the power exclusively belongs *to say whether the land does need to be drained, and if so, how the ditches shall be dug, and the amount of the damages to be paid to the owners of the land* through which they may pass. Over these questions the county court has no control, except that of saying whether the report when made shall be recorded."

There was therefore no error committed in refusing the defendant's application for issues to be preliminarily disposed of, and in proceeding to appoint the commissioners.

Although the point was not made, we have had some difficulty in determining the question of jurisdiction, which the court is not at liberty to overlook.

In *Bunting* v. *Stancill*, 79 N. C., 180, the court was called on to determine the effect of the two enactments on the subject of drainage of low lands made at the same session of the general assembly, the one taking effect on the 27th day of February, 1877, the other on the 9th day of March following, and it was held that under the latter, the action must be begun by summons " returnable to the next term" of the superior court. These acts were both repealed by the act of February 20th, 1879, (ch. 51,) as well as chapter 39 of Battle's Revisal, and chapter 112 of the acts of 1874–'75, and the law contained in the Revised Code, chapter 40, as amended by the act of 1868–'69, ch. 164, re-instated in their stead. The amendment made by the last revised enactment provides for drainage on a large scale and the investment

of those whose lands are to be drained with corporate privileges, and in terms is additional to that amended.

It provides for proceedings before the superior court, "as prescribed in other cases of special proceedings," but is not intended to supersede the provisions for individual relief, contained in the Revised Code. But the Revised Code directs the party to apply by petition "to the county or superior court of law of the county in which the lands sought to be drained or embanked, or some part of such lands, lie;" and as neither such tribunal now exists, unless the jurisdiction is conferred upon the superior court, their successor by implication (for it is not in direct terms) this part of the enactment is inoperative.

Upon a full examination of the two statutes now in force, and acting upon a presumed legislative intent that both should be effective, we have come to the conclusion that the jurisdiction clearly defined in the latter, must be substituted in place of the extinct tribunals mentioned in the former, and is amendatory in this particular also. This construction gives force to both acts, and produces harmony and consistency in their application to the classes of cases for which each was intended. But the Revised Code requires the appointment of seven disinterested freeholders as commissioners, instead of the number prescribed in proceedings under the amendatory act, and these provisions may well consist together. There is, therefore, error in the order appointing three commissioners only, and it must be reformed in this respect, and it is, in all others, affirmed.

The objection that no statement of the case in the superior court comes up to this court is not tenable. The case made before the judge and sent up, on the appeal to him, is the case upon which we must act in reviewing his judgment and deciding upon its correctness. This will be certified.

PER CURIAM. Modified and affirmed.